WEATHERWAX *v.* GORMAN.

1. FRAUDULENT CONVEYANCES — BANKRUPTCY — DEEDS — SETTING ASIDE—EVIDENCE.

On a bill by a trustee in bankruptcy to set aside as fraudulent a conveyance of land made by one who held the title in fraud of the bankrupt's creditors, evidence examined, and *held,* not to show that defendant was a party to any fraudulent purpose of the grantor or the bankrupt, or that he had any knowledge of any infirmity in the title received.

2. BANKRUPTCY—FRAUDULENT CONVEYANCES—SUBROGATION.

Where a good faith grantee of land from one who held it in fraud of the creditors of a bankrupt took it subject to certain incumbrances, which were valid and enforceable as against the bankrupt, he is entitled, on a bill by the trustee in bankruptcy to set the conveyance aside, to be repaid the amount of consideration actually paid, together with the sums paid to discharge the incumbrances, as a condition of granting the relief prayed.

3. SAME—TRUSTEE'S BOND—RECORD—NOTICE.

The record of the bond of a trustee in bankruptcy cannot operate as notice to a grantee of land from a solvent grantor who appears to have title that such title is affected by the fraud of an insolvent who is an entire stranger to the record title.

Appeal from Washtenaw; Kinne, J. Submitted October 16, 1907. (Docket No. 77.) Decided December 10, 1907.

Bill by I. H. Weatherwax, trustee in bankruptcy of the estate of George K. Harder & Company, against Peter Gorman, Peter Hendrick, and C. E. Collins to set aside certain deeds. From the decree rendered, complainant appeals. Affirmed.

*Elmer N. Peters,* for complainant.

*J. S. Gorman* (*A. J. Sawyer,* of counsel), for defendants.

OSTRANDER, J.   The bill in this cause was filed by the trustee of the bankrupt estate of George K. Harder & Company, the purpose being to secure a decree setting aside certain deeds of land and vesting the title to the land in complainant as such trustee.   The petition in bankruptcy was filed September 28, 1904.   It is charged that defendant Gorman claims to be owner of the land by virtue of a purchase made by him from one Hendrick, who held title for the bankrupt, and that Gorman is not a good faith purchaser.   The court below found that Gorman acted in good faith in purchasing the land, but as there was testimony tending to prove the land to be worth from $1,500 to $1,800, as the purchase price which Gorman was to pay was $800, and as the amount which Gorman had actually paid was $661.48, a decree was entered giving complainant the privilege of paying this amount to Gorman within 60 days, in which case the deeds were to be set aside; if the money was not paid, the title was confirmed in Gorman, subject to a small mortgage, the validity of which is not disputed.   From this decree, complainant, alone, appealed.   The title to the premises was never of record or otherwise, by any conveyance, in the bankrupts, or either of them.   It was owned June 22, 1904, in fact and of record, by William C. Briggs and wife of Eaton Rapids, and on that day was conveyed by them by warranty deed to Peter Hendrick, who, it is charged, and we may assume, held the title so conveyed in fraud of the bankrupts' creditors.   The land when owned by Briggs was incumbered by a mortgage known as the Whittaker mortgage, amounting, at the time of the transfer to Hendrick, to $430, which Hendrick assumed and agreed to pay.   As against all other incumbrances, the deed executed by Briggs covenants that the premises are free and clear.   The good faith of Briggs is not assailed.   There was in fact another mortgage, known as the Collins mortgage.   There was also a record of an attachment levy, made a year previous to the sale to Gorman, in a suit in which the National Grocer Company

was plaintiff and the Harders defendants, and a certified copy of the trustee's bond was also recorded in the office of the register of deeds. The deed from Briggs to Hendrick was never recorded, for the reason that taxes upon the land were unpaid. On or about April 25, 1905, Harder, acting as the accredited agent of Hendrick, sold the farm to Gorman. Harder produced an abstract of title, apparently genuine, posted to date, showing title to be in Hendrick and showing certain incumbrances, including the Collins mortgage, but not the attachment levy or the trustee's bond. He also produced what appeared to be the original warranty deed from Briggs to Hendrick, bearing the indorsement of the register of deeds, showing that it had been recorded. The sum of $117.21 was paid to Harder in cash. Incumbrances, including taxes and the Whittaker and Collins mortgages, were computed to amount to $682.79. Harder delivered to Gorman a quitclaim deed of the property, executed by Hendrick and his wife, which recites a consideration of $300. The sum of $177.19 was retained by Gorman until the Collins mortgage, admitted to be valid, but which Harder claimed that Briggs, by reason of his covenant of warranty, was bound to release, should be discharged and, as Gorman claims, until, also, he should be furnished with a warranty deed. Later, Gorman paid the taxes and Whittaker mortgage, which, with the sum he paid to Harder and interest, makes up the total of $661.48.

The questions presented in this court are (1) whether complainant is entitled to the land discharged of Gorman's claim, and if not (2) whether, because it appears that the trustee has not sufficient money to discharge this claim, he is entitled to the land subject to a lien for the Gorman claim. As to the first question, the position of complainant is, that if Gorman did not accept and claim title under the quitclaim deed, he is a mere volunteer in the payments he made; if he acquired an interest in the land, he assumed the payment of the mortgage and taxes and cannot be subrogated to the mortgagees' rights; if he was a

party to the fraud of Hendrick and the bankrupts, he will not be aided by the equitable doctrine of subrogation.

It is claimed that evidence of the bad faith of defendant Gorman is found in the circumstances here stated:

(1) He was one of the appraisers of this land at the time the attachment was levied on it by one of the creditors of Harder prior to the adjudication in bankruptcy; the appraisers fixed the value of the land at $800. The appraisal was made June 27, 1904. Gorman explains this transaction by saying that he did not know that he was appointed appraiser in an attachment suit, or that an attachment suit had been begun; that he was approached by strangers and asked to fix a value upon the property; that he gave them his estimate of the value; it was written down and he signed it.

(2) The acceptance of a quitclaim deed. The testimony for defendant Gorman tends to show that he offered to pay $800 for a good title of the land; that upon the production by Harder of a quitclaim deed executed by Hendrick and his wife, he insisted upon a warranty deed but retained the quitclaim deed upon the assurance of Harder that he would procure and deliver to him a warranty deed and would secure the discharge of the Collins mortgage. The Collins mortgage has never been discharged and a warranty deed has never been furnished nor has the money which was reserved to secure the performance of both of these undertakings, and which was deposited in the bank by Gorman, ever been paid over; that he in fact knew nothing of the condition of the record title except as it was disclosed by the abstract, which appeared to be genuine.

(3) The inadequacy of the purchase price. The testimony concerning the value of the land is conflicting. It was valued on the tax roll for the year 1903 at $1,600; in 1904 at $1,800, and in 1905, when it was assessed to defendant Gorman, at $1,350. As opposed to this, there is the appraisement made in the attachment suit and testimony of people who live in the neighborhood of the land

that it is worth seven dollars an acre and there are 120 acres; testimony tending to prove that it was trading property, only a portion of it being hard land; Gorman's own testimony that in 1905 the land was worth no more than $800.

(4) Other circumstances disclosed. Gorman immediately took possession of the land and, prior to the filing of the bill in this cause, which was in December, 1905, he had cut and removed considerable valuable timber therefrom. He paid the delinquent taxes. May 15,. 1905, according to his testimony, he paid the Whittaker mortgage.

We are not satisfied that Gorman was party to any fraudulent purpose of Harder and Hendrick, and find that he had no actual knowledge of any infirmity in his title. The character of Harder as disclosed by the record sufficiently accounts for a fraudulent abstract and the production of a spurious deed. The alleged inadequacy of price, alone, complainant's proof of value resting upon the assessed value as shown by tax rolls for 1903, 1904, and 1905, and defendants', upon opinions of neighbors, including Gorman, is not so clearly apparent as to support a finding of fraudulent action on the part of Gorman. Whether defendant Gorman agreed to accept or was in fact willing to purchase and receive a quitclaim deed, is a question of more difficulty. Assuming it to have been the kind of conveyance bargained for, it does not follow that he is entitled to no consideration. *Taylor* v. *Roniger*, 147 Mich. 99; *Cleland* v. *Clark*, 123 Mich. 179. Except as against creditors of Harder, Hendrick owned the land when he conveyed it to Gorman. If it had passed to Harder instead, he would have taken it subject to existing liens. Complainant could succeed to no greater rights. So that if defendant Gorman is held to have had notice of the claim of complainant by reason of the record of the trustee's bond and the law of Congress (bankruptcy act of 1898, section 21 *e*; Brandenburg on Bankruptcy [3d Ed.], § 559), equity does not require that the trustee shall now take the land discharged of the liens.

The fact that Gorman had agreed to pay the incumbrances as a part of the purchase price is in no manner controlling of equities here. The argument made, based upon the rule that one assuming and agreeing to pay a mortgage or the grantee of such a purchaser, who pays it, thereby extinguishes and satisfies it so far as his grantor is concerned, is inapplicable. The grantor is not complaning. No rights of innocent purchasers have intervened the payment and the decree. And we are not inclined to hold that the act of Congress referred to has any such force as is claimed for it, as notice. If it has, then no one can safely purchase land from one who appears to have title thereto and who is solvent and whose grantors were solvent, except at the peril of discovering later that some of the conveyances in his chain of title are affected by the fraud of an insolvent who is an entire stranger to the record title. Whether, therefore, defendant Gorman did or did not receive the kind of conveyance bargained for, complainant is entitled to no more favorable decree than the one appealed from. It is affirmed, with costs to defendant Gorman.

McALVAY, C. J., and CARPENTER, HOOKER, and MOORE, JJ., concurred.