Michael R. LAFLAMME, individually and on behalf of all others similarly situated, Plaintiff,

v.

CARPENTERS LOCAL # 370 PENSION PLAN and The Board of Trustees of Carpenters Local # 370 Pension Plan, Defendants.

No. 01–CV–640.

United States District Court, N.D. New York.

Nov. 28, 2003.

Cooper, Erving & Savage (Phillip G. Steck, of counsel), Albany, NY, for plaintiff.

Edgar Pauk (Edgar Pauk, of counsel), New York City, pro se.

Tocci, Parker & Tocci, LLP (Dominick P. Tocci, Esq., Jennifer T. O'Neil, Esq., of counsel), Albany, NY, for Defendants.

## MEMORANDUM–DECISION and ORDER

HURD, District Judge.

### I.  INTRODUCTION

On May 1, 2001, plaintiff Michael LaFlamme ("plaintiff"), individually and on behalf of all others similarly situated, filed a class action complaint against defendants, Carpenters Local #370 Pension Plan ("plan" or "defendants") and the Board of Trustees of Carpenters Local #370 Pension Plan ("board" or "defendants"), alleging that the plan violates the minimum benefit accrual provisions of the Employee Retirement Income Security Act ("ERISA"), 29 U.S.C. § 1054(b).[1] (Docket No. 1.) On February 10, 2003, plaintiff's motion to certify as a class all

1. A second claim for relief was discontinued by stipulation. (Docket No. 12.)

plan participants who had suffered a break in covered service was granted pursuant to Federal Rule of Civil Procedure 23. (Docket No. 33.)

Thereafter, both sides moved for summary judgment, and plaintiff filed a motion to amend the complaint to add another cause of action. (Docket Nos. 42, 46.) Plaintiff also filed a motion to strike the affidavits of certain actuaries retained by defendants. (Docket No. 45.) Prior to oral argument, the court granted the parties permission to file submissions relating to the applicability and effect of *Langman v. Laub*, 328 F.3d 68 (2d Cir.2003), which defendants contend controls disposition of plaintiff's claim. (Docket No. 63.)

Oral argument was heard on July 25, 2003, in Albany, New York. Decision was reserved.[2]

## II. FACTUAL BACKGROUND

Under the terms of the plan, any years in which participants are not engaged in work covered under the plan are considered "[b]reak years," and a participant having two consecutive break years is considered to have suffered a "break in service." (Docket No. 25, Ex. B, ¶ 34.) Where a participant suffers a break in service, the accrual rate for the payment of his or her benefits "freezes." The amount of pension benefits payable for the covered work prior to the break in service is calculated on the basis of whatever the accrual rate is at the time of the break in service. Then, if the employee returns to covered employment, his benefits from that time forward are calculated at whatever the accrual rate is when he ceases to be covered again—i.e., when the employee retires or suffers another break in service.

To understand how this freezing rule works, it is helpful to consider the case of the lead plaintiff, Michael LaFlamme. He worked as a carpenter from 1969 to 1980, 1984 to 1985, and 1992 to 1997. Being a member of Carpenters Local # 370, he was "covered" under the plan for all or certain parts of those years worked. He accrued 9.3

credits (years of service) from 1969 to 1980, to be paid at an accrual rate of $11.00 per credited hour. He accrued 0.9 credits from 1984 to 1985, to be paid at an accrual rate of $20.00 per credited hour. And he accrued 3.29 credits from 1992 to 1997, to be paid at an accrual rate of $53.00 per credited hour. Under the plan, had he not incurred the two breaks in service, his pension benefit upon retirement would have been $714.97 per month. Instead, because he incurred such breaks, it is only $294.67 per month.

### A. Plaintiff's Claim

Plaintiff claims this freezing rule violates the minimum accrual rate mandated by ERISA. ERISA mandates that a defined benefit plan like the one at issue here must satisfy one of three minimum accrual rate schedules. *See* 29 U.S.C. §§ 1054(a)(1), 1054(b). The parties do not seem to dispute that the relevant benefit accrual rule in this case is what it is known as the ERISA's "133 1/3% rule." Under that rule, the minimum accrual standard is satisfied "if under the plan the accrued benefit payable at the normal retirement age is equal to the normal retirement benefit and the annual rate at which any individual who is or could be a participant can accrue the retirement benefits payable at normal retirement age under the plan for any later plan year is not more than 133 1/3 percent of the annual rate at which he can accrue benefits for any plan year beginning on or after such particular plan year and before such later plan year." 29 U.S.C. § 1054(b)(1)(B). Plaintiff therefore seeks a declaration that the pension plan, through its use of the freezing rule, is in violation of this ERISA provision because the difference between the lowest and highest yearly accrual rates applicable to certain pension plan participants is greater than one-third. Plaintiff also seeks to have the pension plan reformed so that it is in compliance with ERISA, and then to have the pension benefits of all proposed class members recalculated under the reformed pension plan.

---

**2.** Subsequent to oral argument, plaintiff filed a motion to file a supplementary memorandum of law regarding the impact of *Langman*. Such

motion is denied as untimely, and, in any event, the arguments made therein are rejected, *see infra* DISCUSSION Section, Point A.

### B. *Plaintiff's Proposed Amended Complaint*

In the proposed amended complaint, plaintiff seeks to add a claim that the freezing rule also violates ERISA's minimum vesting provisions, 29 U.S.C. § 1053. The complaint in this case was filed on May 1, 2001. (Docket No. 1.) On September 18, 2001, a Uniform Pretrial Scheduling Order was filed, setting a November 1, 2001, deadline for the amendment of pleadings. (Docket No. 8, ¶ 6.) By letter dated March 11, 2002, counsel for defendants requested an extension of the discovery and motion deadlines. (Docket No. 9.) Plaintiffs did not object to the proposed extension. (Docket No. 10.) Accordingly, on March 14, 2002, an Amended Pretrial Scheduling Order was filed, extending the discovery deadline to June 3, 2002, and the motion filing deadline to September 3, 2002. (Docket No. 11.) It was expressly noted that the deadline for amending the pleadings had passed. *Id.* at ¶ 5.

Over thirteen months later, and nearly eighteen months after the deadline had passed, on April 29, 2003, plaintiff moved to amend the complaint to add another cause of action. At no time prior to filing such motion did plaintiff request an extension of the pleading amendment deadline, or in any way object to the statement in the Amended Pretrial Scheduling Order that the deadline had passed.

### III. *DISCUSSION*

### A. *Viability of Plaintiff's Claim in Light of Langman v. Laub*

Both plaintiff and defendants have moved for summary judgment on plaintiff's ERISA claim. Summary judgment must be granted when the pleadings, depositions, answers to interrogatories, admissions and affidavits show that there is no genuine issue as to any material fact, and that the moving party is entitled to summary judgment as a matter of law. Fed.R.Civ.P. 56; *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 247, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986); *Richardson v. New York State Dep't of Correctional Serv.,* 180 F.3d 426, 436 (2d Cir.1999). Facts, inferences therefrom, and ambiguities must be viewed in a light most favorable to the non-movant. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 586, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986); *Richardson,* 180 F.3d at 436; *Project Release v. Prevost,* 722 F.2d 960, 968 (2d Cir.1983). Once the moving party has met the initial burden of demonstrating the absence of a genuine issue of material fact, the nonmoving party "must set forth specific facts showing that there is a genuine issue for trial." Fed.R.Civ.P. 56; *Liberty Lobby, Inc.,* 477 U.S. at 250, 106 S.Ct. 2505; *Celotex Corp. v. Catrett,* 477 U.S. 317, 323, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986); *Matsushita Elec. Indus. Co.,* 475 U.S. at 587, 106 S.Ct. 1348. At that point the nonmoving party "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co.,* 475 U.S. at 586, 106 S.Ct. 1348. To withstand a summary judgment motion, sufficient evidence must exist upon which a reasonable jury could return a verdict for the nonmovant. *Liberty Lobby, Inc.,* 477 U.S. at 248–49, 106 S.Ct. 2505; *Matsushita Elec. Indus. Co.,* 475 U.S. at 587, 106 S.Ct. 1348.

After the parties had filed their respective motions for summary judgment, the Second Circuit Court of Appeals issued its decision in *Langman v. Laub,* 328 F.3d 68 (2d Cir. 2003). The plan in *Langman* contained a "separation provision," which provided that any employee not working a minimum number of hours in covered employment was said to have been "separated from employment." *Id.* at 70. Any participant who was separated from employment was to have his or her benefit rate "pro-rated," i.e., for the portion of covered service prior to the separation, the participant was to receive the benefit rate in effect at the time of separation. *Id.* The plaintiff had worked in covered employment from 1953 to 1979, and again from 1979 to 1996, the year he retired. *Id.* Throughout the years the plaintiff worked in covered employment, the benefit rate had increased. *Id.* at 69–70.

The plaintiff brought suit, arguing that the separation provision violated ERISA's 133 1/3% rule, and that the benefit rate in existence when he retired should be used to calculate his pension for all covered years of

employment. *Id.* at 71. The Second Circuit rejected this argument, holding that the pro-rating of the plaintiff's pension benefit calculations, in accordance with the separation provision, did not violate the 133 1/3% rule. *Id.* at 72. The court noted that the rule

is irrelevant to across-the-board increases in benefit rates made at some future time on behalf of all current employees regardless of period of service. Indeed, it would be a strange rule that would prohibit a fund from making a more than one-third increase in its across-the-board benefit rate unless the rule were retroactively applied to all former employees; yet this would be the effect of plaintiff's interpretation.

*Id.* at 71–72.

█ Despite plaintiff's attempts to portray the contrary, the instant case presents a fact pattern virtually identical to that in *Langman.* Both the instant case and *Langman* involve a break in service provision that mandates benefit rate calculation of pre-break service at the rate in effect at the time of the break, and post-break service at the rate in effect at the time of the next break, or at the time of retirement. Both involve challenges to such break in service provision as violative of ERISA's 133 1/3% rule. Courts have had no problem rejecting arguments such as those made by plaintiff in light of *Langman. See Melvin v. UA Local 13 Pension Plan,* No. 98–CV–6347CJS(F), available at 2003 WL 22384789 (W.D.N.Y. Sep.26, 2003); *King v. Pension Trust Fund of Pension, Hospitalization and Benefit Plan of Elec. Indus.,* available at 2003 WL 22071612 (E.D.N.Y. Sep.5, 2003).

In addition, plaintiff's May 15, 2003, statement "that the grounds for decision in *Langman,* as well as the facts recited in the decision, preclude its application to the case at bar," (Docket No. 64), is at the very least intellectually disingenuous. The lower court in *Langman* held that the plaintiff could not recover because part of his covered and non-covered employment pre-dated ERISA, and the law prior to the passage of the statute allowed for more liberal determinations of benefit accrual rates. However, plaintiff here latches onto the court's statement that

the freeze rule, to the extent it would have been applicable after ERISA became effective, would have violated the 133 1/3% rule. For example, under the heading "The *Melvin* and *Langman* cases Are On Point And Not Distinguishable," plaintiff notes that the lower court in *Langman* "held that a 'freeze' violated the 133 1/3% schedule." (Docket No. 53, p. 7.) The same statement was essentially repeated in an earlier submission to the court. (Docket No. 44, pp. 12–13, 15) ("What a plan cannot do is permit the coexistence in the same plan year of two or more accrual rates, where the difference between the lowest rate and any later rate is greater than one third, [when] such result is obtained ... by creating a 'freeze' of historical accrual rates as in *Melvin, Langman,* and the case at bar ...."). The Second Circuit in *Langman,* however, explicitly and directly rejected the lower court language cited by plaintiff. To now label *Langman* factually inapplicable is confounding and unpersuasive. *Langman* controls the disposition of plaintiff's claim, and it must therefore be dismissed with prejudice.

### B. *Plaintiff's Proposed Amended Complaint*

In his motion to amend, plaintiff seeks to add a claim that the freeze rule in the plan also violates ERISA's minimum vesting standards, 29 U.S.C. § 1054. As noted, the deadline for amending the complaint was November 1, 2001, as set in the Uniform Pretrial Scheduling Order. (Docket No. 8, ¶ 6.) Plaintiff's motion to amend was not received by the court until nearly eighteen months later, in late April of 2003.

"Ha[ving] found that the interests of justice are most effectively served by adopting a systematic, differential case management system which tailors the level of individualized and case specific management to such criteria as case complexity, time required to prepare a case for trial, and availability of judicial and other resources," Local Rule 16.1 authorizes the district judge or magistrate assigned to a particular case—like Magistrate Judge Randolph F. Treece in this case—to issue a UPSO. Loc. R. 16.1(e).

The importance of the UPSO, to a district court's effective control and management of a case, cannot be overstated. *See, e.g., Public Citizen v. Liggett Group,* 858 F.2d 775, 790 (1st Cir.1988), *cert. denied,* 488 U.S. 1030, 109 S.Ct. 838, 102 L.Ed.2d 970 (1989) ("[Scheduling] orders and their enforcement are regarded as the essential mechanism for cases becoming trial-ready in an efficient, just, and certain manner. The control of these schedules is deliberately reposed in the court, and not in counsel, so that this end may be achieved"); *Potomac Electric Power Co. v. Electric Motor Supply, Inc.,* 190 F.R.D. 372, 375–76 (D.Md.1999) ("Scheduling orders are necessary tools in managing the district court's caseload as it is well known that we litigate these days under the burden of heavy caseloads and clogged court calendars") (internal quotations and citation omitted); *Taylor v. Collins,* 574 F.Supp. 1554, 1556 (E.D.Mich.1983) ("Deadlines must be respected; without such respect, courts are unable to regulate their dockets"); *see also Hoffmann–La Roche Inc. v. Sperling,* 493 U.S. 165, 173, 110 S.Ct. 482, 107 L.Ed.2d 480 (1989) ("The interest of courts in managing collective actions in an orderly fashion is reinforced by Rule 16(b), requiring entry of a scheduling order limiting time for various pretrial steps such as joinder of additional parties"). To be sure, "[t]he Magistrate's Scheduling Order is not a frivolous piece of paper, idly entered, which can be cavalierly disregarded by counsel without peril." *Gestetner Corp. v. Case Equip. Co.,* 108 F.R.D. 138, 141 (D.Me.1985).

■ Thus, Local Rule 16.1(f), mirroring Fed. R. Civ. 16(b) as well as the UPSO in this case, mandates that any deadlines instituted therein "shall be strictly enforced and shall not be modified by the court, even upon stipulation of the parties, except upon a showing of good cause." Loc. R. 16.1(f). Whether "good cause" exists depends upon the diligence of the moving party. *See Grochowski v. Phoenix Constr.,* 318 F.3d 80, 86 (2d Cir.2003) (affirming district court denial of scheduling order modification where moving party delayed over year before seeking to amend pleading, discovery was finished, and a summary judgment motion was pending); *Parker v. Columbia Pictures Indus.,* 204 F.3d 326, 340 (2d Cir.2000). Good cause may be established if the moving party can demonstrate "that the deadlines cannot reasonably be met despite the diligence of the party needing the extension." *Corkrey v. Internal Revenue Service,* 192 F.R.D. 66, 67 (N.D.N.Y.2000). It may also be established by demonstrating that reasonably unforeseeable events occurring after the entry of the scheduling order precluded compliance with the deadlines in the UPSO. *Id.; Oxaal v. Internet Pictures Corp.,* 2002 WL 485704, at *1 (N.D.N.Y. Mar.27, 2002). "Although the existence or degree of prejudice to the party opposing the modification might supply additional reasons to deny a motion, the focus of the inquiry is upon the moving party's reasons for seeking modification. If that party was not diligent, the inquiry should end." *See Johnson v. Mammoth Recreations, Inc.,* 975 F.2d 604, 609 (9th Cir.1992); *accord Rent–A–Center, Inc. v. 47 Mamaroneck Ave. Corp.,* 215 F.R.D. 100 (S.D.N.Y.2003); *Pratt v. City Mission Soc., Inc.,* 1999 WL 222568 (W.D.N.Y. Apr.12, 1999).

■ Plaintiff claims that the deadline for amending the pleadings passed while defendants were refusing to provide discovery. As a result of this conduct, the discovery deadline was stayed, and even after this, it took months for defendants to provide the necessary discovery. Thus, according to plaintiff, the timing of the new claim is more due to defendants' dilatory conduct rather than any lack of diligence on plaintiff's part. Plaintiff also argues that, in any event, leave to amend is not required because the new cause of action is not an independent claim; it is merely another reason why the freeze rule is unlawful.

This discovery argument, though creative, is unpersuasive. Plaintiff at no point during the discovery dispute asked for an extension of the amending deadline, or a stay of the same after the discovery deadline was stayed. If plaintiff truly had in mind a new cause of action, it there is simply no plausible reason why such an extension or stay was not sought. Plaintiff has not offered any other arguments that amount to the good cause showing required to amend and/or dis-

regard the November 1, 2001, deadline set forth in the Uniform Pretrial Scheduling Order. Also rejected is plaintiff's argument that leave to amend was not required because the proposed new cause of action is not an independent claim. If this argument is accepted, a complaint containing one cause of action arising out of a particular incident could be infinitely amended at will by a plaintiff so long as any added claims are based on the same conduct. Accordingly, plaintiff's motion to amend the complaint must be denied.[3]

## IV. CONCLUSION

The Second Circuit's decision in *Langman*, which flatly rejected the argument that a break in service provision violated ERISA's 133 1/3% rule, effectively disposes of plaintiff's claim. Plaintiff's motion to amend the complaint to add a new cause of action under ERISA based on the freeze rule is flagrantly untimely, and plaintiff has failed to carry the burden of showing good cause as to why such a claim should be permitted a year and a half after the expiration of the deadline to amend the pleadings.

Accordingly, it is

ORDERED that

1. Plaintiff's motion for summary judgment is DENIED;

2. Plaintiff's motion to amend the complaint is DENIED;

3. Plaintiff's motion to strike certain affidavits is DENIED as moot;

4. Defendants' motion for summary judgment is GRANTED; and

5. The complaint is DISMISSED.

The Clerk is directed to enter judgment accordingly.

IT IS SO ORDERED.

---

**3.** Doubt is also expressed as to the merits of the proposed new cause of action. Essentially, plaintiff argues that by conditioning the increasing nature of the benefit rate upon a person's service remaining continuous, the freeze rule violates ERISA's prohibition against the conditioning of accrued benefits on future events. The claim would thus depend on whether participants have a vested interest (i.e., accrued benefit) in future rate increases. It is difficult to see how participants have a *vested* interest in *future* rate increases, when the timing and substance, much less the mere occurrence, of such increases is completely unknown. Plaintiff's argument might hold more weight if there was a set schedule as to when increases were to take place, and that schedule was followed. Here, however, increases are adopted at the discretion of the plan sponsors. No one really knows for a fact when or if a rate increase will occur. It would seem more sensible to conclude that one only has a *vested* interest in an increase *when it occurs*, and if one is working in covered employment at the time.