CITY OF DETROIT v HAMTRAMCK COMMUNITY FEDERAL
CREDIT UNION

Docket No. 68902. Submitted February 7, 1985, at Detroit.—Decided
June 20, 1985.

Plaintiff, City of Detroit, brought an action in the Wayne Circuit
Court seeking a determination of the just compensation due to
the defendant, Hamtramck Community Federal Credit Union,
for the condemnation of its property as part of the Central
Industrial Park Project. Following a jury trial, the trial court,
David C. Vokes, J., entered an order of judgment awarding
defendant $574,000, representing $452,000 for the land and
improvements and $122,000 in business interruption damages.
Plaintiff appeals from the order of judgment. *Held:*

1. The trial court did not err in submitting defendant's claim
for business interruption damages to the jury. The proofs
introduced to support defendant's claim for such damages were
sufficiently certain to create a factual question for the jury.

2. The Court of Appeals declined to address two of defen-
dant's issues which were not raised at trial.

3. The trial court did not err in refusing to instruct the jury
that defendant had the burden of proof concerning the damages
for business interruption. There was no error in the actual
instructions given by the trial court. Adequate guidance was
given to the jury concerning the proof required to establish
such damages.

4. Appellate review of an issue raised by the plaintiff regard-
ing the admission into evidence of certain videotaped deposition

REFERENCES FOR POINTS IN HEADNOTES
[1] Am Jur 2d, Eminent Domain §§ 170, 266, 279.
  Local use zoning of wet lands or flood plain as taking without
  compensation. 19 ALR4th 756.
[2] Am Jur 2d, Eminent Domain §§ 421, 431, 435.
  Damages resulting from temporary conditions incident to public
  improvements or repairs as compensable taking. 23 ALR4th 674.
[3] Am Jur 2d, Appeal and Error §§ 885 *et seq.*
[4] Am Jur 2d, Appeal and Error § 146.
[5] Am Jur 2d, Eminent Domain §§ 418, 506.

testimony is precluded as a result of plaintiff's failure to provide a transcript of the testimony.

Affirmed.

1. EMINENT DOMAIN — JUST COMPENSATION — CONSTITUTIONAL LAW.

Private property shall not be taken for public use without just compensation therefor being first made or secured in a manner prescribed by law; just compensation is that amount of compensation which places the injured party in as good a condition as he would have been had the injury not occurred (Const 1963, art 10, § 2).

2. EMINENT DOMAIN — BUSINESS INTERRUPTION DAMAGES.

Damages resulting from business interruption are compensable in condemnation cases provided the damages can be proven with a reasonable degree of certainty.

3. APPEAL — EVIDENCE.

It is not the duty of the Court of Appeals, in reviewing a trial court's decision to allow the jury to be presented with certain evidence, to assess the weight and value of the evidence; rather, the Court of Appeals must determine whether the evidence was of such a nature that it could be properly considered by the jury.

4. APPEAL — EVIDENCE — EMINENT DOMAIN.

A trial court's determination on the admissibility of evidence will not be reversed unless that decision was clearly erroneous or constituted an abuse of discretion; strict rules as to the admissibility of testimony are not always enforced in condemnation cases.

5. APPEAL — JURY INSTRUCTIONS — EMINENT DOMAIN — BUSINESS INTERRUPTION DAMAGES — BURDEN OF PROOF — STANDARD JURY INSTRUCTIONS.

A trial court in a condemnation action does not err in instructing the jury that they could not award business interruption damages unless they found that the evidence establishing the damages was not unduly speculative; a Michigan Standard Jury Instruction concerning condemnation recommends that no instruction on the general burden of proof be given in condemnation cases (SJI2d 90.03).

*Hylton & Hylton, P.C.* (by *Kenneth N. Hylton, Sr.*), for plaintiff.

*Cahalan & Ackerman* (by *William L. Cahalan* and *Alan T. Ackerman),* for defendant.

Before: BRONSON, P.J., and M. J. KELLY and S. J. LATREILLE,* JJ.

PER CURIAM. Plaintiff, City of Detroit, appeals as of right from an order of judgment awarding defendant, Hamtramck Community Federal Credit Union (credit union) $574,000 as just compensation for the condemnation of its property. We affirm.

Defendant was the owner of improved property upon which it operated as a credit union, and which was condemned by the City of Detroit as part of the Central Industrial Park Project. See generally *Poletown Neighborhood Council v Detroit,* 410 Mich 616; 304 NW2d 455 (1981). Following a jury trial, the credit union was awarded $574,000, representing $452,000 for the land and improvements and $122,000 in business interruption damages.

Plaintiff first argues that the trial court erred in submitting defendant's claim for business interruption damages to the jury because the evidence upon which this claim was predicated was too speculative and conjectural to support the award.

Michigan Constitution 1963, art 10, § 2 provides that "[p]rivate property shall not be taken for public use without just compensation therefor being first made or secured in a manner prescribed by law". Just compensation is that amount of compensation which places the injured party in as good a condition as he would have been had the injury not occurred. *In re Grand Haven Highway,* 357 Mich 20, 28; 97 NW2d 748 (1959); *In re Widen-*

---

* Circuit judge, sitting on the Court of Appeals by assignment.

*ing of Bagley Avenue,* 248 Mich 1, 5; 226 NW 688 (1929).

It has long been held that damages resulting from business interruption are compensable in condemnation cases provided the damages can be proven with a reasonable degree of certainty. *Grand Rapids & I R Co v Weiden,* 70 Mich 390, 395; 38 NW 294 (1888); *In re Park Site,* 247 Mich 1, 3; 225 NW 498 (1929); *In re Grand Haven Highway, supra.*

We disagree with plaintiff's contention that the proofs introduced to support defendant's claim for business interruption damages were too speculative and conjectural. See *In re Grand Haven Highway, supra.* In reviewing a trial court's decision to allow the jury to be presented with certain evidence, it is not this Court's duty to assess the weight and value of the evidence. Rather, we must determine whether the evidence was of such a nature that it could be properly considered by the jury. *Id.,* p 38. A trial court's determination on the admissibility of evidence will not be reversed unless that decision was clearly erroneous or constituted an abuse of discretion. Further, it is well recognized that strict rules as to the admissibility of testimony are not always enforced in condemnation cases. *Western Michigan University Board of Trustees v Slavin,* 381 Mich 23, 26; 158 NW2d 884 (1968); *State Highway Comm v Gaffield,* 108 Mich App 88, 93; 310 NW2d 281 (1981).

To establish its claim for business interruption damages, the credit union utilized the testimony of certain expert witnesses and the manager of the credit union, Irene Kurpiewski.

Ms. Kurpiewski testified that the credit union was originally chartered in the 1940's to service the employees of the Dodge main plant and related facilities and was named the Dodge Main

Federal Credit Union. In the late 1970's, due to the downturn in the automobile industry, the credit union lost a large number of its members. After the Dodge main plant closed in 1979, the credit union applied to the federal authorities for a change in their charter from an industrial credit union to a community credit union. The charter amendment was granted in January of 1980. The result of the charter amendment was to expand the potential membership of the credit union to over 20,000 members. Under the new charter, all persons who worked, worshipped or lived in the City of Hamtramck could become members of the credit union. The potential membership of the credit union prior to the amendment change was approximately only 8,000.

Prior to any notification that the city intended to condemn its property, the credit union had developed a marketing plan to expand its membership as a result of the charter amendment. Ms. Kurpiewski testified to the various activities undertaken by the credit union to improve its image in the community. She further testified that prior to the condemnation the credit union had no plans to move to a new location. The credit union was, however, planning to set up a walk-up facility in the heart of downtown Hamtramck to make the credit union more accessible to the community. the plans to create a walk-up facility were abandoned after notification of the condemnation was given by the city.

Ms. Kurpiewski explained how the condemnation disrupted the business of the credit union. It was her belief that the condemnation disrupted the concentration on the marketing plan which was the cornerstone of its efforts to attract new members. She testified that because demolition started across the street from the credit union it

was required to cancel a festival intended to promote the credit union, and that after the condemnation was initially announced no set time was given by which the credit union would be required to move. According to Ms. Kurpiewski, this fact further disrupted the business of the credit union. Because of the unprecedented speed of the condemnation project, the credit union was required to make two moves. In addition, the credit union was unable to find a suitable building with the City of Hamtramck and thus was required to build a new facility.

The construction of the new building took approximately one year. During this period, the credit union operated out of a temporary location which was a double-wide banking trailer rented from the National Bank of Detroit. Ms. Kurpiewski testified that she felt that the net effect of the condemnation and the temporary move to the trailer prevented the credit union from attracting new members as it had hoped. In addition, as a result of the double move, the credit union spent substantial sums to relocate to the trailer and then to its new permanent location. These expenses made up the bulk of the claims for business interruption damages. Ms. Kurpiewski also kept a diary of all time spent by credit union employees related to the condemnation. This included overtime spent by employees of the credit union as a result of the condemnation.

Prior to the announcement of the condemnation project, the credit union was suffering a loss in membership as well as heavy loan losses. Ms. Kurpiewski testified that the loss in membership and the loan losses were due primarily to the closing of the Dodge main plant. The evidence also indicated that the credit union was suffering a reduction in its loan portfolio, a fact which was

referred to by the city as an indication that the credit union was having trouble staying in business. Testimony at trial indicated, however, that the reduction in the loan portfolio was also due to the National Credit Union Administration's restriction of the money supply in order to slow consumer borrowing. In addition, the rating of the credit union went down during the condemnation because the credit union violated a fixed asset rule by allowing its land and buildings to exceed 5% of its total assets.

With Ms. Kurpiewski's testimony providing a factual basis, defendant utilized a series of experts to further establish its claim for business interruption damages.

The item of damages most disputed by the city concerned the factual basis for the alleged loss in interest income relating to the failure to attract new members as a result of the condemnation. The basis for the estimation of lost interest income was derived by determining the market penetration of similar credit unions within their potential membership base, the expectation of deposits from potential new members, and the income that these new deposits could have earned if invested by the credit union, minus interest paid on the deposits. Thomas Czubiak, defendant's expert, testified that the market penetration of the credit union in the years 1972-1979 was approximately 72%. However, the market penetration for the credit union in 1981 was only 26.3% of the potential membership. Evidence presented at trial indicated that the average market penetration for a credit union in Michigan is approximately 65%. Mr. Czubiak testified that, based on the experiences of other credit unions, he believed that the credit union should have had an increase in its membership roles of 12% as a result of the charter amendment and the

resulting potential membership expansion. Thus, Mr. Czubiak indicated that, based on these figures, the credit union failed to attract approximately 2,731 new members because of the condemnation. He further testified that the average deposit for a new member was approximately $150 per year, which the credit union did not receive because of the condemnation. The total lost deposits were set at $791,000 which was multiplied by 16.8%, the interest rate at which the credit union could have invested the money. Thus, the credit union claimed a loss in revenue resulting from the condemnation of $57,552. The city, while objecting to the conjectural nature of the evidence used to establish these damages, did not bring in any experts of its own to challenge the accuracy of these figures. The remaining business interruption damages were based on the expenses incurred by the credit union as a result of moving first to the temporary trailer location and then to its new permanent location.

In addition, defendant presented the videotaped *de bene esse* deposition of Allan McNabb, a recognized authority on credit unions and credit union organizations. His testimony further supported Czubiak's, although McNabb believed Czubiak's estimate of a typical deposit was low. Much of McNabb's testimony was based upon studies of similar credit unions with like assets and capital.

We believe that the evidence, including the testimony described above, on the failure to attract new member deposits was sufficiently certain to create a factual question for the jury. While we do not doubt that challenges to accuracy of the studies done by defendant could have been made, such challenges would go to the weight and credibility of the testimony, rather than its admissibility. We therefore find no error in the trial court's refusal

to strike defendant's claim for business interruption damages. We further note that the issue of lost profits, which is not properly a business interruption claim, was not raised below and we therefore express no opinion on this issue.

The city also argues that the credit union's claimed damages for parking, mileage and overtime wages were not properly recoverable, as the credit union had a duty to mitigate its damages and avoid these expenses. This issue, however, was not raised at trial and plaintiff cites no authority to support its propostion. We therefore decline to address it further.

The city next argues that the trial court erred in refusing to instruct the jury that defendant had the burden of proof concerning the damages for business interruption. We again disagree.

A Michigan Standard Jury Instruction concerning condemnation, SJI2d 90.03, recommends that no instruction on the general burden of proof be given in condemnation cases. The comments to SJI2d 90.03 state that "[t]here is strictly speaking no *general* burden of proof applicable to all issues in all condemnation proceedings". SJI2d 90.03, p 14-13. (Emphasis in original.) The comment then goes on to detail when the giving of a burden of proof instruction *may* be appropriate. The comment specifically states that neither party has the burden of proof on the issue of damages. The city cites no cases which suggest that the giving of a burden of proof instruction is necessary or appropriate in a case involving business interruption damages.

The city asserts that fairness required an instruction on the burden of proof in this case because of the nature of the damages. According to the city, the failure to give such an instruction left the jury without proper guidance. Yet, a review of

the actual instructions given by the trial court indicates that adequate guidance was given to the jury concerning the proof required to establish business interruption damages. The court instructed the jury that they could not award business interruption damages unless they found that the evidence establishing the damages was not unduly speculative. We therefore find no error.

The city lastly argues that certain hypothetical questions asked of Allan McNabb, defendant's expert, were improper and therefore the trial court erred in allowing the videotaped deposition testimony into evidence. The failure to provide a transcript of the testimony in compliance with the court rules would reduce any ruling on this issue to pure speculation. Appellate reivew of this issue is, therefore, precluded.

Affirmed. Cost to appellant.