GUIDER v SMITH

Docket Nos. 77323, 79507. Submitted December 17, 1985, at Detroit.
    Decided January 6, 1987. Leave to appeal applied for.
    Terrance L. Guider brought in Wayne Circuit Court a 42 USC
    1983 action for damages against Ronald Smith, a Detroit police
    officer, and the City of Detroit, alleging that his federal civil
    rights had been violated when Smith shot him. Plaintiff was
    shot as he attempted to flee from the site of a reported break-
    ing and entering. Plaintiff was not armed. Plaintiff's theory of
    recovery was that Smith's use of deadly force to apprehend him
    was excessive and unnecessary under the circumstances and
    amounted to a deprivation of his constitutional rights. The trial
    court, Paul S. Teranes, J., granted a directed verdict in favor of
    the City of Detroit on the basis that plaintiff failed to show
    gross negligence or deliberate indifference on the part of the
    city in the training or supervising of its police officers in the
    use of deadly force, but denied Smith's motion for a directed
    verdict. The jury returned an award in favor of plaintiff in the
    amount of $472,000. The trial court refused to award plaintiff
    attorney fees. Defendant Smith appealed. Plaintiff cross-ap-
    pealed.
    The Court of Appeals *held:*
    Affirmed in part, reversed in part and remanded.
    C. W. SIMON, JR., J., would hold:

REFERENCES
Am Jur 2d, Appeal and Error § 778.
Am Jur 2d, Civil Rights §§ 16, 19, 269.
Am Jur 2d, Public Officers and Employees §§ 360, 366.
Am Jur 2d, Trial §§ 202 *et seq.*
Construction and application of Civil Rights Attorney's Fees
    Awards Act of 1976 (amending 42 USCS § 1988), providing that
    court may allow prevailng party, other than United States,
    reasonable attorney's fee in certain civil rights actions. 43 ALR
    Fed 243.
Police action in connection with arrest as violation of Civil Rights
    Act, 42 USCS § 1983. 1 ALR Fed 519.
Modern status: right of peace officer to use deadly force in attempt-
    ing to arrest fleeing felon. 83 ALR3d 174.
See also the annotations in the Index to Annotations under Appeal
    and Error; Arguments of Counsel.

1. The trial court properly refused to give the jury instruction relative to the duty of a person who knows that he is being lawfully arrested to refrain from resisting that arrest, since the question in this case was not whether a lawful arrest could be made but rather whether the degree of force used by the officer in effecting the arrest was reasonable under the circumstances.

2. A police officer is entitled to qualified immunity in a 42 USC 1983 action for money damages if the officer acted in good faith. While there was evidence that defendant Smith was aware of the police department regulation which allowed an officer to use his weapon to arrest a fleeing felon, Smith never testified that at the time of the shooting he was relying in good faith on the legality and constitutionality of the regulation.

3. The record fails to establish that the remarks of counsel were so egregious as to warrant a new trial.

4. The trial court did not abuse its discretion in permitting the jury to see the enlargements of the diagrams contained in an exhibit which had been admitted.

5. Reversal is not mandated by reason of the sidebar conversation between the judge and one of plaintiff's witnesses.

6. Defendant Smith's motion for a directed verdict was properly denied.

7. The damages award was not excessive or unreasonable in light of the medical evidence.

8. Since the Detroit Police Department policy relative to the use of weapons in making arrests on nonviolent felons is unconstitutional, it was error for the trial court to grant the directed verdict in favor of the City of Detroit.

9. While attorney fees are generally awarded in 42 USC 1983 actions, where, as here, the prospects of a significant recovery would be sufficient to make counsel easily obtainable, a trial court, in its discretion, may refuse to award attorney fees. There was no abuse of discretion in denying attorney fees.

M. J. KELLY, J., concurred in the result reached by Judge SIMON, but wrote separately on the question of the failure of the trial court to instruct the jury on the affirmative defense of qualified immunity. He would hold that, since the jury was accurately instructed on the state of the law regarding the use by a police officer of deadly force as it applied at the time the incident occurred, the trial court was not obligated to instruct on the qualified immunity defense.

BRONSON, J., did not participate.

Opinion of C. W. Simon, J.

1. Civil Rights — Police Officers — Qualified Immunity — Good Faith.

*A police officer who is a defendant in a 42 USC 1983 civil rights action for damages based on a claim that the shooting of the plaintiff by the police officer denied the plaintiff his civil rights is entitled to a qualified immunity if the officer acted in good faith; the good faith necessary to warrant a qualified immunity is not shown where the officer fails to present evidence at trial that, at the time of the shooting, he believed that the shooting of the plaintiff was lawful.*

2. Appeal — Attorney Misconduct — Fair Trial.

*The Court of Appeals will generally not reverse on the basis of attorney misconduct unless the alleged misconduct evidences a deliberate course of conduct on the part of the offending attorney aimed at preventing the opposing party from receiving a fair and impartial trial.*

3. Trial — Opening Statement.

*Counsel is entitled to make a full and fair opening statement of his case, including both the facts that he intends to prove and the relevant law; what constitutes a fair and proper opening statement is left to the sound discretion of the trial court.*

4. Civil Rights — Municipal Corporations.

*The policy of the Detroit Police Department which permits Detroit police officers to use deadly force against nonassaultive and unarmed citizens suspected of committing a crime against property which involves no violence or threat of violence is unconstitutional because it permits an unnecessarily severe and excessive response that is all out of proportion to any danger to the community; accordingly, it is error to grant a directed verdict in favor of the City of Detroit in a 42 USC 1983 civil rights action arising out of the shooting of a citizen by a police officer who shot the person in reliance upon that police department policy.*

5. Civil Rights — Attorney Fees.

*A trial court, in the exercise of its discretion, should ordinarily award attorney fees to a plaintiff who has been successful in a 42 USC 1983 civil rights action for damages; however, a trial court may properly deny an award for attorney fees where, at the time of the bringing of the suit, the substantive claim was so strong on the merits as to result in a substantial award such that private counsel could be easily and readily obtainable (42 USC 1988).*

CONCURRENCE BY M. J. KELLY, P.J.

6. CIVIL RIGHTS — POLICE OFFICERS — QUALIFIED IMMUNITY.

> *A police officer who is a defendant in an action for damages brought pursuant to 42 USC 1983 for violation of the plaintiff's civil rights is shielded from civil liability for damages if the officer's conduct was discretionary in nature and consistent with constitutional law as established at the time the conduct occurred; the relevant inquiries in establishing this qualified immunity are the established state of the law at the time the conduct occurred and the officer's compliance with that law.*

*Jaffe, Snider, Raitt & Heuer, P.C.* (by *Brian G. Shannon* and *Carol A. Osborne*), and *Theodore Spearman,* for plaintiff.

*Cooper & Fink* (by *Daniel S. Cooper* and *David H. Fink*), for defendants.

Before: M. J. KELLY, P.J., and BRONSON and C. W. SIMON, JR.,* JJ.

C. W. SIMON, JR., J. On August 11, 1980, plaintiff, Terrance Guider, filed a complaint in Wayne Circuit Court against the City of Detroit and Detroit police officer Ronald Smith, alleging that the defendants violated his federal civil rights and seeking damages pursuant to 42 USC 1983. Plaintiff was shot by officer Smith as he fled from the scene of an apparent breaking and entering. Plaintiff's theory of recovery was that Officer Smith's use of deadly force to apprehend him was excessive and unnecessary under the circumstances and amounted to a deprivation of his constitutional rights.

A jury trial was held in the case commencing on September 12, 1983. After the plaintiff had presented his case, the trial court granted a directed verdict to defendant City of Detroit. The court

---

* Circuit judge, sitting on the Court of Appeals by assignment.

concluded that the evidence was insufficient to show gross negligence or deliberate indifference on the part of the city in the training and supervising of its police officers in the use of deadly force. Thereafter, the case went to the jury concerning the liability of Officer Smith. On October 18, 1983, the jury found in favor of the plaintiff and awarded him $472,000 in compensatory damages. Both sides appeal as of right raising numerous issues.

I

On April 20, 1978, plaintiff, then an eighteen-year-old youth with no criminal record, received a telephone call from a friend, Jeff Neely, who asked the plaintiff to help him remove his belongings from a house Neely claimed he had been sharing with his girlfriend. Following Neely's directions, plaintiff parked his car behind a house that Neely claimed was his girlfriend's. They entered at the side of the house. On plaintiff's third trip outside with Neely's alleged belongings, plaintiff saw a car with its lights off creeping down the alley towards the house. Fearing that the occupants of the house were returning, he dropped what he was carrying and ran. The next thing he remembered was that he was face down on the ground with somebody over him telling him to lie still because he had been shot. Plaintiff sustained serious injuries as a result of the shooting.

Defendant Smith testified that he became a police officer in 1974. On April 20, 1978, he was one of four members of a cruiser unit assigned to the 13th Precinct. That night his unit got a call to respond to "1145 Hague, two black males, B & E, the rear door." The radio call also said it was the first house on the alley. The officers pulled up in

the alley behind the house with their lights off. They saw two black males in the back yard who immediately took off running. Defendant chased after the plaintiff and yelled "Halt, police!" three times. After the third time, Officer Smith fired one shot at the plaintiff striking him in the neck. Officer Smith testified that he fired because he was afraid he would lose the suspect between two houses where, for his own safety, he would not be able to pursue as fast. Officer Smith did not see anything to lead him to believe that the plaintiff was armed. An internal police department investigation concluded that the shooting was justified.

II

Defendant Smith's first claim of error concerns the trial court's refusal to give certain jury instructions. Initially, defendant claims that the trial court erred in refusing to read SJI2d 115.09 in its entirety. After reviewing the record, I cannot agree.

SJI2d 115.09 states:

If a person has knowledge, or by the exercise of reasonable care should have knowledge, that he or she is being lawfully arrested by a law enforcement officer, it is the duty of that person to refrain from resisting the arrest.

An arresting officer may use such force as is reasonably necessary to effect a lawful arrest. However, an officer who uses more force than is reasonably necessary to effect a lawful arrest commits a battery upon the person arrested to the extent the force used was excessive.

The trial court read to the jury the second paragraph of SJI2d 115.09 verbatim, except that the trial court substituted the word "wrong" for "bat-

tery." The first paragraph of the instruction was not read to the jury. After jury instructions were completed, defense counsel objected that the judge read only the second paragraph of SJI2d 115.09. The trial court and plaintiff's counsel thought that they had all agreed only to read the second paragraph, but defense counsel remembered differently. The trial court noted the defendant's objection, but the jury was not further instructed.

Generally, a requested and applicable standard jury instruction should be given by the trial court. MCR 2.516(D)(2). However, whether a particular requested instruction is applicable and accurately states the law based on the individual characteristics of a given case is left to the sound discretion of the trial court. *Johnson v Corbet,* 423 Mich 304, 327; 377 NW2d 713 (1985). Further, the Court in *Johnson* stated that a reviewing court should not reverse for a violation of MCR 2.516 unless it concludes that noncompliance with the rule resulted in such unfair prejudice that the failure to vacate the jury award would be inconsistent with substantial justice. 423 Mich 327.

Defendant argues that the first paragraph of SJI2d 115.09 was applicable for two reasons. First, defendant maintains that the instruction was applicable because whether the police officer's force was reasonable is related both to the right of the police officer to pursue and the duty of the fleeing felon to submit. Second, defendant asserts the instruction was applicable because otherwise the jury might infer the existence of a constitutional right to escape. However, plaintiff maintains that the instruction was simply not applicable because his breach of the duty to submit to an arrest was irrelevant to the issue of whether Officer Smith's use of deadly force violated his constitutional rights. I agree with the plaintiff.

Concerning the liability of Officer Smith, the jury was required to determine whether the degree of force employed by Smith was reasonable under the circumstances. The fact that plaintiff may have had a duty to submit to a lawful arrest is irrelevant to the determination of whether the force used by Officer Smith was reasonable. Defendant has cited no case which states that a fleeing felon's duty to submit to a lawful arrest makes the use of deadly force more reasonable. In fact, the United States Supreme Court has suggested that deadly force cannot be used on a fleeing felon who poses no serious threat of harm. *Tennessee v Garner,* 471 US —; 105 S Ct 1694; 85 L Ed 2d 1 (1985). Thus, the fact that the plaintiff had a duty to refrain from resisting arrest is not relevant to the determination of whether the force used was reasonable, and therefore the first paragraph of SJI2d 115.09 was properly excluded from the jury instructions. Further, we reject defendant's contention that the instructions read even remotely suggested to the jury that the plaintiff had a constitutional right to escape.

Defendant also asserts that the trial court erred by refusing to give an instruction to the jury regarding the qualified good-faith immunity to actions under 42 USC 1983. While defense counsel apparently never offered a specific instruction on good-faith immunity under § 1983, she did object to the fact that the court's instruction regarding the use of deadly force did not contain the "good faith defense as enunciated in *Harlow*" or the "immunity defense under 1983."

If supported by the evidence and under certain circumstances, a police officer is entitled to qualified immunity to a § 1983 action for money damages if the officer acted in good faith. See *Harlow v Fitzgerald,* 457 US 800; 102 S Ct 2727; 73 L Ed 2d

396 (1982); *Landrum v Moats,* 576 F2d 1320 (CA 8, 1978), cert den 439 US 912 (1978). In *Harris v Pirch,* 677 F2d 681, 686 (CA 8, 1982), the Court stated:

> In § 1983 actions for damages defendants are entitled to a qualified immunity from liability based on a good faith belief in the propriety of their actions and reasonable grounds for that belief. *Procunier v Navarette,* 434 US 555; 98 S Ct 855; 55 L Ed 2d 24 (1978); *Scheuer v Rhodes,* 416 US 232; 94 S Ct 1683; 40 L Ed 2d 90 (1974). Therefore, "[w]hen a court evaluates police conduct relating to an arrest, its guideline is good faith and probable cause." *Id.* at 245 . . . . "Thus, even though a police officer may not have chosen the wisest or most reasonable course of action, he will not be civilly liable if his conduct is based on a reasonable and good faith belief that it was necessary under the circumstances. [*Glasson v Louisville,* 518 F2d 899, 910 (CA 6, 1975).]"

In this case, I believe that, if the record indicates that testimony was offered to support a good faith defense, then Officer Smith would have been entitled to an instruction on the defense. After reviewing the record, however, I conclude that the defendant did not give any testimony which would have supported a good faith defense. Officer Smith's defense at trial was that the force he used to make the arrest was necessary and therefore justified. The defendant clearly testified that he believed the shooting was necessary. However, the defendant did not testify that he believed that it was lawful for him to shoot the plaintiff. At trial, he indicated that he was aware of a police department regulation which allowed an officer to use his weapon to effectuate the arrest of a fleeing felon. Defendant did not testify, however, that when he shot the plaintiff he relied in good faith on the

legality and constitutionality of the regulation. Defendant's choice appears to have been one of trial strategy. Thus, since the testimony did not establish that the defendant believed that shooting the plaintiff was lawful, naturally there was no testimony to show that it was reasonable for him to believe this. Therefore, defendant was not entitled to a good faith immunity instruction.

Next, defendant argues that during the course of trial the attorney for the plaintiff repeatedly injected irrelevant and inflammatory comments which allegedly served to prejudice the jury against the defendant. The allegations of misconduct concern numerous statements made by plaintiff's counsel during opening and closing arguments and during trial that the defendant maintains were so egregious as to warrant a new trial. I disagree.

When reviewing an appeal asserting improper conduct of an attorney, this Court must first determine whether or not the claimed error was, in fact, error and, if so, whether it was harmless. *Reetz v Kinsman Marine Transit Co,* 416 Mich 97, 102-103; 330 NW2d 638 (1982). Generally, this Court will not reverse unless the alleged misconduct evidences a deliberate course of conduct on the part of the offending attorney aimed at preventing the opposing side from receiving a fair and impartial trial. *Kokinakes v British Leyland, Ltd,* 124 Mich App 650, 655; 335 NW2d 114 (1983), lv den 419 Mich 867 (1984). However, this Court will not hesitate to reverse where "the remarks of counsel were of such a nature as to deflect the attention of the jury from the issues involved and had a controlling influence upon its verdict." *Wayne Co Road Comm'rs v GLS LeasCo, Inc,* 394 Mich 126, 134, n 6; 229 NW2d 797 (1975).

Concerning plaintiff's opening statement, defen-

dant complains that plaintiff's counsel improperly injected his own personal beliefs, interpretation of the law, and engaged in otherwise inflammatory conduct. Plaintiff's attorney's opening statement consumed fifty-eight pages of transcript. Defendant's counsel objected thirteen different times. During the course of plaintiff's opening argument, the trial court instructed the jury eight times that the statements of the attorneys were not to be considered as evidence or testimony.

During opening argument, counsel is entitled to "make a full and fair statement of [his] case and the facts [he] intends to prove." MCR 2.507(A). This includes a statement of the relevant law upon which the attorney bases his case. See *Fosdick v Van Arsdale,* 74 Mich 302, 304-305; 41 NW 931 (1889). What constitutes a fair and proper opening statement is left to the sound discretion of the trial court. *Coon v Williams,* 4 Mich App 325, 334; 144 NW2d 821 (1966), lv den 378 Mich 752 (1967). In this case, I can find no abuse of discretion that requires reversal. I believe that any error was sufficiently cured by the trial court's repeated instruction to the jury that the statements of counsel were not evidence or testimony and that the court, not the attorneys, would inform the jury of the applicable law.

Defendant also complains of several other allegations of misconduct, including personal attacks by plaintiff's counsel on defense counsel's honesty and integrity, the mentioning of multi-million dollar awards, appeals to sympathy and the use of so-called extravagant language. However, many of the alleged improper comments were never objected to, and, therefore, appellate review is precluded.

Further, as previously indicated, to warrant reversal the misconduct must be egregious enough to

have diverted the jury from considering the merits of the case. *GLS LeasCo, supra.* After reviewing the record in this case I find no grounds for reversal. To be sure, this was a hard-fought trial with inappropriate remarks being made by both sides during the course of the three-week trial. The trial was marked by vigorous and, at times, seemingly hostile advocacy on both sides. In fact, after reviewing the transcript, one could be left with the impression that counsel for both sides spent as much energy verbally attacking each other and each other's clients as they did presenting the merits of their case. To the extent that defendant's counsel suffered personal attacks, she fought back blow for blow. Thus, I conclude that neither side was unfairly prejudiced and the comments from each tended to cancel the other's out.

Therefore, I find that, when the record is reviewed in its entirety, it does not appear that plaintiff's counsel engaged in a course of conduct which was deliberately calculated to prejudice the jury and deny defendant a fair trial. Getting carried away in argument is by no means rare and will not be the basis for reversal when the trial transcript indicates an otherwise fair trial.

Next, defendant asserts that the trial court committed error by allowing the plaintiff to show to the jury certain proposed exhibits. The disputed exhibits, 79, 80 and 81, involved medical evidence. Exhibit 81 was a medical journal article describing certain surgical procedures used to correct and treat the plaintiff's injuries, and exhibits 79 and 80 were enlargements of diagrams contained in the article. Only exhibit 81 was actually admitted into evidence. Defendant argues that the display of the exhibits was cumulative and prejudicial, warranting a new trial. I find no error.

A decision whether to admit certain evidence

rests within the sound discretion of the trial court, and that decision will not be set aside absent an abuse of discretion. *Hadley v Trio Tool Co,* 143 Mich 319; 372 NW2d 537 (1985). When reviewing a trial court's decision to allow the jury to be presented with certain evidence, this Court will not assess the weight and value of the evidence, but will only determine whether the evidence was of such a nature that it could be properly considered by the jury. *Detroit v Hamtramck Community Federal Credit Union,* 146 Mich App 155, 158; 379 NW2d 405 (1985).

In this case, it should be initially noted that defendant actually withdrew his initial objection to the admission of exhibit 81 and therefore we conclude the exhibit was properly admitted. Exhibits 79 and 80 were never actually admitted into evidence but were used as illustrations during the testimony of two of plaintiff's treating physicians. Defendant asserts that exhibits 79 and 80 were cumulative since they both were found in exhibit 81. Under MRE 403, the trial court may in its discretion exclude evidence which is cumulative. *Mumaw v Mumaw,* 124 Mich App 114, 121; 333 NW2d 599 (1983). Here, I cannot say that the trial court abused its discretion in allowing the physicians to refer to exhibits 79 and 80. Certainly, permitting the physicians to testify while referring to the enlargements of the diagrams of the injury to plaintiff's neck undoubtedly made their testimony clearer.

I also disagree with the defendant's arguments that the diagrams were irrelevant and more prejudicial than probative due to their alleged gruesomeness. After reviewing the exhibits, I cannot conclude that the anatomically accurate drawings of plaintiff's neck and mouth depicting plaintiff's wound were particularly gruesome. Finally, I be-

lieve that the exhibits were relevant because they had a tendency to make more probative the facts surrounding the injuries suffered by the plaintiff. MRE 401. Therefore, the trial court committed no error in permitting the jury to see the exhibits.

Defendant also complains of an incident which occurred between the trial judge and a witness for the plaintiff. While the jury was filing out of the courtroom for an afternoon break, the trial judge started a conversation with the witness who had been testifying, James Fyfe, one of the plaintiff's expert witnesses in police tactics and training. The court stated that the conversation concerned congressional hearings in Washington, D.C. at which Fyfe had testified and which were unrelated to the case at bar. The defendant subsequently moved for a mistrial on the grounds that the conversation would have lent undue weight to that witness' testimony.

Following the defendant's motion, the trial court inquired of the jury whether they saw him speaking with the witness and whether they had heard any of the conversation. Three jurors indicated that they had seen the judge speaking with the witness, but each indicated that no part of the conversation had been heard. The court then instructed the jury that they should disregard any inference that they might draw from the fact that the conversation took place concerning what weight should be given to the testimony of that witness. On appeal, defendant states that, rather than curing any error, the instruction only reinforced the implication that the trial court endorsed Fyfe's testimony.

I believe that defendant's claim that he is entitled to a new trial based on the conversation between the judge and witness is without merit. Defendant has failed to show any actual bias on

the part of the trial judge or that he suffered any actual prejudice as a result of the incident. The record clearly reveals that the conversation between the court and the witness did not favor either side or place undue weight on that witness' testimony. Moreover, I find that the trial court's prompt curative instructions adequately cured any error which might have possibly resulted from the incident.

Following the presentation of the plaintiff's case, both the City of Detroit and defendant Smith moved for a directed verdict. The court denied defendant Smith's motion for a directed verdict on the ground that there were questions of fact regarding whether the use of deadly force was reasonably necessary. Defendant asserts that his motion should have been granted. I disagree.

In deciding whether a directed verdict is proper, the standard of review is whether, taking the evidence in a light most favorable to the nonmoving party, a prima facie case of liability has been established. *Koski v Vohs,* 137 Mich App 491, 508; 358 NW2d 620 (1984), rev'd 426 Mich 424 (1986). In order to establish a prima facie case of liability under 42 USC 1983, the plaintiff was required to establish that defendant, acting under the color of state law, deprived him of a right secured by the constitution or laws of the United States. *Napier v Jacobs,* 145 Mich 285; 377 NW2d 879 (1985). In this case, plaintiff attempted to show that the shooting was per se unreasonable under the Fourteenth Amendment and unreasonable under the facts of the case.

In *Tennessee v Garner,* 471 US —; 105 S Ct 1694; 85 L Ed 2d 1 (1985), the United States Supreme Court recently considered the constitutionality of the use of deadly force to prevent the escape of an apparently unarmed suspected felon.

The case involved a Tennessee statute that provided: "[I]f, after notice of the intention to arrest the defendant, he either flees or forceably resists, the officer may use all necessary means to effect the arrest." Tenn Code Ann § 40-7-108 (1982); *Garner, supra,* 85 L Ed 2d 5. In *Garner,* the police shot and killed an unarmed burglary suspect as he tried to escape the scene.

The Supreme Court held that the apprehension of a felony suspect by the use of deadly force was a seizure subject to the reasonableness requirement of the Fourth Amendment.

> The use of deadly force to prevent the escape of all felony suspects, whatever the circumstances, is constitutionally unreasonable. It is not better that all felony suspects die than that they escape. Where the suspect poses no immediate threat to the officer and no threat to others, the harm resulting from failing to apprehend him does not justify the use of deadly force to do so. It is no doubt unfortunate when a suspect who is in sight escapes, but the fact that the police arrive a little late or are a little slower afoot does not always justify killing the suspect. A police officer may not seize an unarmed, nondangerous suspect by shooting him dead. The Tennessee statute is unconstitutional insofar as it authorizes the use of deadly force against such fleeing suspects.
>
> It is not, however, unconstitutional on its face. Where the officer has probable cause to believe that the suspect poses a threat of serious physical harm, either to the officer or to others, it is not constitutionally unreasonable to prevent escape by using deadly force. Thus, if the suspect threatens the officer with a weapon or there is probable cause to believe that he has committed a crime involving the infliction or threatened infliction of serious physical harm, deadly force may be used if necessary to prevent escape, and if, where feasible, some warning has been given. As applied in such

circumstances, the Tennessee statute would pass constitutional muster. [85 L Ed 2d 9-10.]

*Garner* has been applied retroactively by the federal courts. See *Acoff v Abston,* 762 F2d 1436 (CA 11, 1985).

Michigan presently follows the common-law rule concerning the use of deadly force which permits the use of deadly force in pursuit of a fleeing felon. *Werner v Hartfelder,* 113 Mich App 747, 753; 318 NW2d 825 (1982). Testimony at trial revealed that Detroit police regulations permit an officer to use deadly force in pursuit of a burglary suspect. Whether such a rule is still viable in light of *Garner* is questionable. Moreover, the evidence supports the trial court's finding that the plaintiff presented a prima facie showing that the defendant's use of deadly force was unreasonable and, therefore, in violation of plaintiff's constitutional rights. There was testimony that other officers and tracking dogs were in the vicinity and that defendant was carrying a portable radio which he could have used to summon back-up help. While defendant testified that if plaintiff had run between the houses he would have lost him, defendant never testified that plaintiff actually turned in that direction prior to the shooting. Therefore, I believe that the question of the reasonableness of defendant's conduct was properly left to the jury and the motion for a directed verdict was correctly denied.

Finally, defendant argues that the jury's award of $472,000 in compensatory damages to the plaintiff was excessive and unfair, warranting a new trial or remittitur. Defendant reasons that the absurdity of the award is indicated by the fact that the mediation panel awarded plaintiff only $30,-000. I find defendant's argument to be without merit.

In *Precopio v Detroit,* 415 Mich 457, 465; 330
NW2d 802 (1982), our Supreme Court stated:

> In reviewing damage awards in cases tried to
> juries, this Court has asked whether the award
> shocks the judicial conscience, appears unsup-
> ported by the proofs, or seems to be the product of
> improper methods, passion, caprice, or prejudice; if
> the amount awarded falls reasonably within the
> range of the evidence and within the limits of
> what reasonable minds would deem just compensa-
> tion for the injury sustained, the verdict has not
> been disturbed.

The Court also refused to evaluate an award by
comparison to an unaccepted mediation award,
finding that such a comparison frustrates the pub-
lic policy that encourages settlements and because
mediation awards oftentimes merely set a figure in
order to facilitate settlement rather than to accu-
rately assess damages. *Id.,* 473-474.

In this case, it cannot be said that the award
shocks the judicial conscience or is unsupported by
the evidence. Defendant ignores the medical testi-
mony which indicated the extensive nature of
plaintiff's injuries and his continuing problems.
Further, there is no exact mathematical formula
which would allow a jury to precisely determine
what award will compensate an injured plaintiff
for the pain and suffering resulting from his inju-
ries. Here, the injuries were extensive and serious
and the amount of pain and suffering endured by
the plaintiff was undoubtedly great. Therefore, it
cannot be said that the damage award was exces-
sive or unreasonable in light of the medical evi-
dence.

Since none of the issues raised by defendant
Smith require reversal of the jury's verdict and

award, the judgment in favor of the plaintiff should be affirmed.

III

On cross-appeal, plaintiff raises two issues. First, plaintiff asserts that the trial court improperly granted the City of Detroit's motion for a directed verdict. Plaintiff also asserts that the trial court abused its discretion in refusing to award him attorney fees under the federal civil rights act.

The trial court granted a directed verdict in favor of the city based on a finding that plaintiff had failed to prove a constitutional violation was caused by an official policy or custom of a municipality, and because the plaintiff had not shown that the city was reckless or grossly negligent in training the defendant. On appeal, plaintiff argues that he did establish a prima facie case of liability. I agree.

A directed verdict is only appropriate where the plaintiff has failed to establish a prima facie case of liability. *Caldwell v Fox*, 394 Mich 401; 231 NW2d 46 (1975). In *Monell v Dep't of Social Services of the City of New York*, 436 US 658; 98 S Ct 2018; 56 L Ed 2d 611 (1978), the United States Supreme Court held that municipalities are persons within the meaning of 42 USC 1983 that can be held directly liable for constitutional violations committed pursuant to a governmental custom, practice or policy. See also *Moore v Detroit*, 128 Mich App 491; 340 NW2d 640 (1983). Since a city police department's customs and policies are considered to be policies of the city itself, it may be liable under *Monell* when its employees implement those policies and thereby violate constitutional rights. See *Taylor v Collins*, 574 F Supp 1554 (ED Mich, 1983).

In this case, the testimony established that it was the policy of the Detroit Police Department to allow the use of deadly force against nonassaultive and unarmed citizens suspected of committing a crime against property involving no violence or threat of violence. In light of *Garner,* I believe that the police rule is unconstitutional under the Fourth and Fourteenth Amendments. While the Detroit rule is more limited than the Tennessee statute, it still permits the use of deadly force against individuals who have committed a crime against property only, whether violent or not. Therefore, I conclude that the policy as implemented in this case is unconstitutional because it permits an unnecessarily severe and excessive police response that is out of all proportion to the danger to the community. Accord, *Werner v Hartfelder, supra,* pp 755-758 (T. M. BURNS, J., dissenting).

Here, the plaintiff argued to the trial court that a directed verdict was improper because the city could be liable to the plaintiff based on the Sixth Circuit's opinion in *Garner v Memphis Police Dep't,* 710 F2d 240, 244 (CA 6, 1983), aff'd sub nom *Tennessee v Garner,* 471 US —; 105 S Ct 1694; 85 L Ed 2d 1 (1985), which held, like the Supreme Court, that the Tennessee statute permitting the use of deadly force against a nonviolent fleeing felon was unconstitutional under the Fourth and Fourteenth Amendments. Thus, the issue was preserved for appeal. I conclude that the city should have been liable based on its unconstitutional policy that was implemented by Officer Smith and the trial court clearly erred in granting a directed verdict to the city. Therefore, the case must be remanded to the trial court for further proceedings.

Concerning the trial court's refusal to grant the

plaintiff attorney fees, I find no abuse of discretion. Pursuant to 42 USC 1988, it is within the discretion of the trial court to determine whether attorney fees should be awarded to the prevailing party. While a successful plaintiff should ordinarily recover his attorney fees under the federal civil rights act, an award is certainly not mandatory under all circumstances. In this case, the trial court refused to grant attorney fees on the grounds that the plaintiff had bright prospects of a substantial recovery in his quasi-tort constitutional claim under § 1983 and, therefore, an award of attorney fees was not warranted. See *Kerr v Quinn,* 692 F2d 875 (CA 2, 1982); *DiFilippo v Morizo,* 759 F2d 231 (CA 2, 1985).

While the bright prospects rule has not been universally accepted by the federal courts, see *Cooper v Singer,* 719 F2d 1496 (CA 10, 1983), it is supported by a substantial body of case law. The bright prospects rule requires that the trial court determine whether the substantive claim was so strong on the merits as to likely result in a substantial judgment such that private counsel could be easily and readily obtainable. *DiFilippo, supra.* Thus, it must be determined whether, absent an award of attorney fees, a similarly situated plaintiff would be deterred from enforcing his constitutional rights. *Milwe v Cavuoto,* 653 F2d 80 (CA 2, 1981). Such a situation should be distinguished from a case seeking injunctive relief where attorney fees ordinarily should be recovered because otherwise certain civil rights violations might go unchecked.

In this case, I cannot say that the trial court abused its discretion in denying plaintiff attorney fees. The court noted that the plaintiff was enforcing an individual right and through a contingency fee arrangement was able to obtain competent

counsel. Further, the court determined that plaintiff's case had a bright prospect for success given the circumstances of the shooting. I do not believe that the trial court erred in its evaluation of the various factors and, therefore, I would affirm the denial of attorney fees.

Affirmed in part, reversed in part and remanded for further proceedings consistent with this opinion.

M. J. KELLY, P.J. *(concurring)*. I concur with the result reached by Judge SIMON, but write separately regarding the trial court's failure to instruct the jury on the affirmative defense of qualified immunity.

Under federal law, police officers are shielded from civil liability for damages recoverable in a § 1983 action if the officer's conduct was discretionary in nature and consistent with constitutional law as established at the time the conduct occurred. This principle of qualified immunity is sometimes referred to as "good faith immunity," which implies that the state of mind of the police officer is relevant. However, the only inquiries relevant to the defense of qualified immunity concern the established state of the law at the time the incident occurred and the officer's compliance with that law. *Harlow v Fitzgerald,* 457 US 800; 102 S Ct 2727; 73 L Ed 2d 396 (1982), and *Bates v Jean,* 745 F2d 1146 (CA 7, 1984). Defendants in this case argue on appeal that error occurred when the jury was not instructed on the affirmative defense of qualified immunity because Officer Smith justifiably and in good faith relied upon the constitutionality of the Detroit Police Department's fleeing felon rule in shooting at plaintiff under the circumstances presented.

If the trial court had instructed the jury on the

constitutional use of deadly force as eventually defined under *Tennessee v Garner,* 471 US —; 105 S Ct 1694; 85 L Ed 2d 1 (1985), as announced by the Sixth Circuit at the time of trial in *Garner v Memphis Police Dep't,* 710 F2d 240 (CA 6, 1983), I would find that the omission of an instruction on the qualified immunity defense constitutes error requiring reversal. Under *Tennessee v Garner,* it is unconstitutional for a police officer to use deadly force unless the officer has probable cause to believe that defendant was armed or posed a threat to the officer or others. The fleeing felon rule in effect in Michigan at the time this incident occurred allows an officer to use deadly force where there is probable cause to believe that the person fleeing has committed murder, armed robbery, rape, kidnapping, arson, or has broken and entered an occupied dwelling. The trial court in this case did not instruct the jury under *Tennessee v Garner,* but instead upheld the constitutionality of the Detroit Police Department's fleeing felon rule and instructed the jury that Officer Smith's use of deadly force was lawful if consistent with that rule. Since the jury was accurately instructed on the state of the law regarding a police officer's use of deadly force as it applied at the time this incident occurred, I do not think the trial court was obligated to instruct on the qualified immunity defense and I therefore concur with Judge SIMON's decision to affirm.

BRONSON, J., did not participate.