LAUDENSLAGER v COVERT

Docket No. 84368. Submitted July 28, 1987, at Grand Rapids. Decided
October 6, 1987. Leave to appeal applied for.

Frances J. Laudenslager worked as a dental assistant for David
Covert, a dentist at the dental clinic at the Kinross Correc-
tional Facility in Sault Ste. Marie, for approximately two and
one-half years. She quit her job in 1981 claiming she was
subjected to sexual remarks and advances by Covert. She and
her husband, Thomas Laudenslager, filed suit against Covert in
the Chippewa Circuit Court alleging sexual discrimination and
intentional infliction of emotional distress. Plaintiffs also filed
suit against the Department of Corrections in the Court of
Claims alleging intentional infliction of emotional distress,
negligence and sexual discrimination. The Department of Cor-
rections moved for summary judgment on the ground of govern-
mental immunity. The Court of Claims ruled that the negli-
gence claim was barred by governmental immunity, that the
intentional infliction of emotional distress claim was not barred
by governmental immunity, and that the sexual discrimination
claim must be brought in circuit court. The Court of Claims
then granted plaintiffs joinder of their claims against defen-
dants to proceed in the circuit court. Following trial, the jury
found no cause of action and ruled in favor of defendants on all
the counts brought in the circuit court. The circuit court judge,
Nicholas J. Lambros, J., having been appointed a judge for the
Court of Claims for purposes of hearing the intentional inflic-
tion of emotional distress claim against the Department of
Corrections, also found no cause of action on that claim. Plain-
tiffs moved for judgment notwithstanding the verdict or a new
trial. The motion was denied. Plaintiffs appealed.

The Court of Appeals held:

REFERENCES

Am Jur 2d, Evidence §§ 1080 et seq.

Am Jur 2d, Expert and Opinion Evidence §§ 45 et seq.; 165 et seq.;
181 et seq.

Eivdence offered by defendant at federal criminal trial as inadmissi-
ble, under Rule 403 of Federal Rules of Evidence, on ground that
probative value is substantially outweighed by danger of unfair
prejudice, confusion of issues, or misleading the jury. 76 ALR Fed
700.

1. The trial court erred in prohibiting plaintiffs from disclosing to the jury the fact that a psychiatrist who testified as an expert witness on behalf of plaintiffs was originally a consultant to defendants. Defendants attempted to impeach the psychiatrist by showing that she was biased. Plaintiffs should have been permitted to bolster the psychiatrist's testimony by showing that she was originally employed by defendants. A new trial is warranted.

2. The trial court did not err in allowing a social worker to testify regarding a Department of Social Services investigation into possible child abuse by Mr. Laudenslager. The testimony was relevant to the issues of causation and damages.

3. The trial court did not err in allowing several defense witnesses to testify regarding Mrs. Laudenslager's conduct outside the work setting. The testimony was relevant to dispute plaintiff's claim that she was a moral, religious woman and sensitive to explicit jokes.

4. There was no error in the trial court's denial of plaintiffs' motion for a directed verdict and judgment notwithstanding the verdict.

Reversed and remanded.

1. WITNESSES — EXPERT WITNESSES — EMPLOYMENT BY ADVERSE
   PARTY.

   A plaintiff who employs the testimony of an expert originally employed by an opposing party may be permitted to disclose the fact of the expert's original employment where the opposing party attempts to impeach the expert on grounds of bias.

2. APPEAL — EVIDENCE — JURY.

   The Court of Appeals, when reviewing a trial court's decision to allow the jury to be presented with certain evidence, will not assess the weight and value of the evidence, but will only determine whether the evidence was of such a nature that it could properly be considered by the jury.

*Joseph J. Mellon,* and *Simpson & Moran, P.C.* (by *James C. Conboy, Jr.*), for plaintiffs.

*Frank J. Kelley,* Attorney General, *Louis J. Caruso,* Solicitor General, and *Eric J. Eggan,* Assistant Attorney General, for defendants.

Before: CYNAR, P.J., and WEAVER and J. H. HAUSNER,* JJ.

PER CURIAM. Plaintiffs appeal as of right from a judgment of no cause of action entered on June 6, 1985, in the Chippewa Circuit Court pursuant to a jury verdict. We reverse.

Plaintiffs initially filed a two-count complaint in circuit court against defendant Covert alleging inter alia that Mrs. Laudenslager (hereinafter referred to singularly as plaintiff) was subject to sexual discrimination by Covert while working for him as a dental assistant at the Kinross Correctional Facility in Sault Ste. Marie, Michigan, in violation of the Civil Rights Act, MCL 37.2101 *et seq.;* MSA 3.548(101) *et seq.* She also alleged intentional infliction of emotional distress as a result of Covert's alleged sexual remarks and advances.

At the same time, plaintiffs filed a three-count complaint in the Court of Claims against defendant Michigan Department of Corrections alleging inter alia intentional infliction of emotional distress, negligence and sexual discrimination.

On September 27, 1982, the DOC filed a motion for summary judgment on all three counts pursuant to GCR 1963, 117.2(1), alleging that plaintiffs failed to state a claim upon which relief could be granted on the basis of governmental immunity.

The Court of Claims judge filed his opinion on December 28, 1982. The judge concluded that plaintiffs' negligence claim was barred due to immunity, the intentional infliction claim was not barred, and the sexual discrimination claim must be brought in circuit court. In a July 15, 1983, order, the Court of Claims judge granted plaintiffs' joinder of their claims against defendant to pro-

* Circuit judge, sitting on the Court of Appeals by assignment.

ceed in circuit court. On March 25, 1983, plaintiffs filed their first amended complaint in circuit court. In this complaint, plaintiffs alleged inter alia intentional infliction of emotional distress and sex discrimination by Covert and sex discrimination by the DOC.

The trial commenced on September 17, 1984. Testimony revealed that Covert commenced employment with the DOC at its Kinross facility in October, 1977. Plaintiff was hired by Covert in December, 1978, as his dental assistant. She remained in that position until her last day of work, July 6, 1981.

She and Covert worked in the dental clinic, which gave dental treatment to prisoners. From May, 1980, until May, 1981, inmate Con W. Ryan was assigned to work as a clerk in the clinic.

Plaintiff testified that the clinic atmosphere was very casual, Dr. Covert had a good sense of humor and, initially, she did not mind the joking which took place at the clinic. After six months at the clinic, Covert began to direct his jokes at her, at times inserting her name in a joke. She was embarrassed and told him to "knock it off."

Covert made frequent remarks about her breast size. He told an inmate while the inmate was in the dental chair, "If you look at her [plaintiff's] breasts long enough, you won't have to have novocaine." Covert would also put his arm around her waist and pull her to him until they were touching.

During the first half of 1980, Covert began wearing surgical gloves while treating his patients. When plaintiff assisted Covert with putting them on, he would act as if he was trying to touch her breasts. Covert also grabbed her by the arm and said, "Let's go to bed," directing her toward of one of the infirmary rooms in the building.

Covert admitted that he told "dirty jokes" in her presence and she blushed. He admitted that some of the jokes involved large breasts. However, he denied inserting her name into any of the jokes. He admitted to once telling plaintiff that, if she lost too much weight, her job would be in jeopardy because he liked women with large breasts. He also admitted to writing a memorandum to the prison's business manager where he referred to plaintiff's unwillingness to go topless. He said it was written "tongue-in-cheek." He also acknowledged placing his arm around plaintiff while reviewing dental charts.

Plaintiffs also presented testimony by plaintiff's treating psychologists, Drs. Richard Shane and William Brady. The expert testimony of Dr. Elissa Benedeke, a psychiatrist, was also introduced. Dr. Benedeke diagnosed plaintiff as suffering from chronic posttraumatic stress syndrome and despondia. The doctor concluded that plaintiff's emotional state was attributable to her job stress brought about by on-the-job harassment.

Following the trial, on October 2, 1984, the jury found in favor of defendants on all three counts. Similarly, the Court of Claims judge ruled from the bench that plaintiffs had no cause of action against the DOC for intentional infliction of emotional distress.

Thereafter, on October 22, 1984, plaintiffs moved for judgment notwithstanding the verdict or a new trial. In an order dated March 25, 1985, the trial court denied plaintiffs' motion. The instant appeal ensued.

Plaintiffs raise five issues on appeal, only one of which is meritorious and dispositive. Plaintiffs contend error by the trial court when it prohibited them from disclosing to the jury the fact that Dr.

Benedeke was originally a consultant to defendants. We agree.

After Dr. Benedeke testified, and outside the jury's presence, plaintiffs' counsel asked the trial court if he could disclose the origin of Dr. Benedeke's involvement in the case on the basis that defense counsel had opened the door to rehabilitative efforts when the doctor's credibility was impeached. The trial judge denied plaintiffs' request because he concluded that no bias was introduced by defendants and the doctor had testified truthfully.

In *Kissel v Nelson Packing Co,* 87 Mich App 1, 3; 273 NW2d 102 (1978), this Court was asked to decide whether a medical doctor retained by a party to examine the opposite party, but who was not to be called by the retaining party, could be deposed or called as a witness by the opposite party. This Court concluded that an opposite party may call or depose an employing party's expert. *Id.,* 4-5.

Having permitted such practice, the Court was then asked to decide if the doctor's testimony could be bolstered by the fact that the doctor was originally employed by the defendant. This Court responded in the negative by stating:

> Testimony as to the expert's original employment is not pertinent to any issue presented, and neither party should be bound by the rejected opinions of experts employed by him to assist in evaluating his case. Furthermore, the credibility of a witness generally may not be bolstered until attacked, McCormick, Evidence (2d ed), § 49, p 102, and we see no reason to deviate from the general rule. [87 Mich App 1, 5.]

In our case, the very same issue is being raised by plaintiffs. They argue that since defendants

attempted to impeach Dr. Benedeke through bias, plaintiffs should have been permitted to bolster her credibility by disclosing who originally hired her for this case. Defendants concede that they did endeavor to impeach the doctor's credibility by showing bias. As a matter of fact, during cross-examination of the doctor defendants specifically stated that that was their purpose for exploring into the doctor's past experience in court. In particular, defendants tried to inquire as to whether the doctor had testified for males in rape cases because apparently Dr. Benedeke has published several articles on women's rights issues. Presumably, defendants' purpose was to tell the jury that, since the doctor was in favor of women's issues, the doctor's evaluation was not objective regarding plaintiff Frances.

We hold that the trial court erred by not permitting plaintiffs to disclose the origin of Dr. Benedeke's involvement in the case. Since defendants raised the question of bias, in favor of a particular category of persons, plaintiffs should have been permitted to rehabilitate the doctor. Thus, a new trial is warranted.

Although we find no merit to plaintiffs' other issues, we will briefly discuss them since two of the issues will come up on retrial.

Plaintiffs argue that the receipt of social worker Susan Bissell's testimony from the records of the Department of Social Services regarding an investigation into possible child abuse by Mr. Laudenslager was erroneous. Through a court order, defendants obtained a copy of Ms. Bissell's file pertaining to the case. The court held an in camera hearing and reviewed the report with both parties' attorneys. The report was not admitted. However, Ms. Bissell was allowed to testify because the trial judge reasoned that this testimony was relevant to

the issues of causation and damages. We concur in the judge's conclusions.

A decision whether to admit certain evidence rests within the sound discretion of the trial court, and that decision will not be set aside absent an abuse of discretion. *Guider v Smith,* 157 Mich App 92, 103-104; 403 NW2d 505 (1987). When reviewing a trial court's decision to allow the jury to be presented with certain evidence, this Court will not assess the weight and value of the evidence, but will only determine whether the evidence was of such a nature that it could properly be considered by the jury. *Id.*

We find no error in allowing Bissell to testify regarding plaintiffs' home environment. This information was relevant in considering the cause of plaintiff's emotional condition, since defendants argued that her condition was not caused by her work environment. Additionally, this testimony went to show Mr. Laudenslager's claim of loss of consortium was not due to his wife's job stress, but to the stress found in the home.

Plaintiffs' third claim of error is based on the court's allowance of several defense witnesses to testify regarding her conduct outside the work setting. Plaintiffs argue that this testimony was irrelevant and highly prejudicial.

We conclude that the testimony was relevant to dispute plaintiff's claim that she was a moral, religious woman and sensitive to explicit jokes. The testimony of these witnesses tended to question whether plaintiff welcomed the conduct and joking of Dr. Covert. Hence, we find no error.

Finally, based on the record and evidence presented, there was no error by the trial judge when he denied plaintiffs' motion for a directed verdict and JNOV since there was a sharp dispute at trial

on the issue whether plaintiff welcomed, and in fact participated in, Dr. Covert's conduct.

Moreover, the verdict was not against the great weight of the evidence, since there was competent evidence to support it. *Willoughby v Lehrbass,* 150 Mich 319, 343; 388 NW2d 688 (1986).

Reversed and remanded.